## 11932

### WATSON, *ET AL.* v. WATSON

#### (132 S. E., 39)

1. PARENT AND CHILD.—In proceedings to determine custody of child, main thing to be considered is best interest of child.

2. HABEAS CORPUS.—In contest involving custody of infant, peculiar and special facts and surroundings should always be carefully examined into.

---

NOTE.—Validity of contract for transfer of paternal responsibility or authority, see notes in 27 L. R. A., 56; 42 L. R. A. (N. S.), 1013.

Denial of custody of child to parent for its well-being, see note in 41 L. R. A. (N. S.), 564.

3. PARENT AND CHILD—MOTHER PERMITTING CHILD TO REMAIN WITH GRANDFATHER FOUR OR FIVE MONTHS AS TEMPORARY ARRANGEMENT IS NOT ESTOPPED TO RECLAIM CUSTODY.—Where mother claimed that leaving of child with grandfather was intended only as temporary arrangement, her permitting child to remain some four or five months would not act as estoppel in proceeding for custody of child.

4. HABEAS CORPUS—ALLEGATIONS, IN PROCEEDING TO REGAIN CUSTODY OF CHILD, THAT MOTHER WAS COERCED AND INTIMIDATED TO SIGN DEED GIVING CHILD TO GRANDFATHER, HELD SUFFICIENT TO ATTACK VALIDITY OF DEED (CIV. CODE 1922, §§ 5563-5567).—Where minor mother under authority of Civ. Code 1922, §§ 5563-5567, executed deed of child to grandfather, allegation, in later proceeding to regain custody, that she was over-persuaded, coerced, and intimidated to sign this paper, *held* sufficient to attack validity of deed.

5. HABEAS CORPUS—SUPREME COURT WILL PASS UPON VALIDITY OF DEED GIVING CHILD TO GRANDPARENT IN MOTHER'S ACTION TO REGAIN CUSTODY, WHERE ORDER STATING THAT JUDGE WAS NOT JUSTIFIED IN SETTING DEED ASIDE WAS ASSIGNED AS ERROR.—In action by mother to regain custody of child after executing deed granting child to grandfather, where the deed was introduced in evidence and county Judge stated that he did not feel justified in setting it aside, error being charged because of failure to hold deed void, *held,* that direct attack had been made against deed, and Supreme Court will pass upon its validity.

6. EVIDENCE—IT IS WELL KNOWN THAT REPUTABLE ATTORNEYS ARE OFTEN CALLED ON TO DRAW INSTRUMENTS WITHOUT INFORMATION AS TO WHAT MAY HAVE BEEN DONE PRIOR TO THEIR BEING APPROACHED IN REGARD TO SUCH PREPARATION.—It is well-known fact that reputable attorneys are often called on to draw instruments and attend legal execution thereof without information as to things which may have been done prior to their being approached in regard to preparation of instruments.

7. HABEAS CORPUS.—Supreme Court will assume that no good mother will readily and willingly, permanently give up her baby.

8. HABEAS CORPUS.—Burden is on one claiming that mother permanently gave custody of her baby to him to prove his contention.

9. HABEAS CORPUS.—Grandfather, claiming that mother had executed deed giving him permanent custody of her child, *held* to have failed to prove his contention.

10. PARENT AND CHILD—ALLEGED DEED GIVING CHILD TO GRANDFATHER HELD INVALID IN VIEW OF DISADVANTAGES SURROUNDING MOTHER.—Where minor mother, on death of husband, executed deed giving child to grandparent, *held* that, because of peculiar circumstances and disadvantages surrounding mother, alleged deed should not stand.

11. PARENT AND CHILD—ALLEGED DEED GIVING CHILD TO GRANDFATHER HELD INVALID IN VIEW OF DISADVANTAGES SURROUNDING MOTHER.— Where minor mother, on death of husband, executed deed giving child to grandparent, *held* that, because of peculiar circumstances and disadvantages surrounding mother, alleged deed should not stand.

11. PARENT AND CHILD.—Best interest of child *held* to require that custody awarded to mother, rather than to grandparent.

12. HABEAS CORPUS—SUPREME COURT WILL REQUIRE AUNT, JOINING WITH MOTHER IN PETITION FOR CUSTODY OF CHILD, TO ENTER INTO PROPER BOND THAT SHE WILL ASSIST MOTHER IN CARING FOR CHILD.—Where mother and aunt had brought proceedings to regain custody of child deeded to grandfather, Court in awarding custody to mother will require that aunt, who had announced that she was willing and able to assist mother in care of child, enter into proper bond for such purpose.

Before ANSEL, J., Greenville, February, 1925. Reversed with directions.

*Habeas corpus* proceedings by Arphenia Jennie Watson, by guardian *ad litem,* and another, against W. M. Watson. From an order dismissing the petition, petitioners appeal.

The order of the County Judge is as follows:

This is a proceeding in *habeas corpus,* brought by the petitioners for the possession of Jessie Lee Watson, an infant child about the age of 10 months, and which child is now in the possession of the respondent, the grandfather.

An order was signed by me requiring the respondent to bring the child before me, which was done.

A return to the writ was filed by the respondent, and affidavits were submitted by petitioners and respondent and arguments made before me by counsel for both sides.

There have been many cases decided by our Courts in cases of this kind, but each case must be governed by the facts of the particular case. The facts as proved show that one Jesse Lee Watson, a son of the respondent, was married to the petitioner, Arphenia Jennie Watson, both of them being under the age of 21 years; that they resided with the respondent; that on the 23rd of January, 1924, the said Jesse

Lee Watson died, and on the 11th of April, 1924, his wife gave birth to a girl child, who is now about ten months old; that the child was born at the home of the respondent; and that on the 10th day of September, 1924, the said Arphenia Jennie Watson, the mother of said infant child, executed a deed to the respondent conveying to him the said child, and the said child has been in his possession and care ever since—soon thereafter the mother left the home of the respondent to take training as a nurse in a hospital, leaving the child with the respondent.

The petitioner had the lawful right to execute the deed referred to, under Section 5563, Code of Laws of South Carolina, 1922, Volume 3. The proviso of that section provides "that nothing herein shall be construed to abrogate, lessen or interfere with the right and duty of a Court of competent jurisdiction at any time, as heretofore, to transfer and assign the custody of a child for its best interest."

So the question for me to determine is: What is for the best interest of this child in the circumstances? Many affidavits were introduced on the hearing before me, and there is some conflict in the statments made. The Court would hardly be justified in setting aside the deed upon the statements made in the affidavits.

The appearance of the child shows that it has been well cared for, and I am satisfied that the respondent is well able and willing to raise the child, and give it all the care and attention due to an infant of that age—the child is not a nursing child, but is being raised "on the bottle." I cannot see my way clear to take the child away from the respondent, but I think that the mother should have the opportunity to visit the child as often as she may desire.

It is, therefore, ordered that the writ of *habeas corpus* be dismissed, that the child be retained by the respondent, and that the mother be, and she is allowed, to visit the said

child as often as she may desire, at the home of the re-
spondent.

*Mr. H. P. Burbage* for appellants.

*Messrs. Dean, Cothran & Wyche* for respondent.

March 5, 1926.

The opinion of the Court was delivered by MR. JUSTICE
BLEASE.

The petitioners instituted *habeas corpus* proceedings
against the respondent for the custody of Jessie Lee Watson,
girl child, now not quite two years of age.

Undisputed facts are as follows:

The petitioner, Arphenia Jennie Watson, is the mother of
the infant, and respondent is a grandfather; petitioner, Jen-
nie Green, is an aunt of Arphenia. Arphenia, when about
16, intermarried with Jesse Lee Watson, a minor at the
time, and son of the respondent. The young husband died
on January 23, 1924, leaving a small estate, of which re-
spondent was appointed administrator. The little girl,
named for her father, was born April 11, 1924, when the
mother was around the age of 17. After the marriage, the
young couple lived with the respondent up to the time of
the husband's death; the baby was born in that home. Ar-
phenia and the baby continued to reside there until about
September, 1924.

A few months after the death of her husband, for some
reason, Arphenia decided to enter training as a nurse. On
September 10, 1924, she executed and delivered a deed,
in proper form, whereby she committed the care, mainte-
nance, and support of her child to the respondent; the paper
being prepared by Col. Alvin H. Dean, a prominent and
highly reputable attorney of the City of Greenville, at the
request of the respondent. Arphenia was not present when
the deed was drawn, but a little later, under the name of
"Janie Watson," she signed it in the presence of Col. Dean
and Mr. W. A. Vaughn, a gentleman of recognized integ-

rity. Soon after the execution of the deed, Arphenia quit the home of the respondent and began her training in the hospital. Not finding the labor there to her liking, she shortly left and went to the home of her aunt, Mrs. Green, where she has since resided.

On February 7, 1925, Arphenia, joined by her aunt, instituted the *habeas corpus* proceeding. It was alleged in the petition that her child was unlawfully detained by the respondent, who refused to surrender her to the mother; that Arphenia was practically forced to leave respondent's home to enter upon her training as a nurse, and was required to leave her child with her father-in-law; that she was induced, over-persuaded, coerced, and intimidated to sign the instrument before referred to as a deed; that she is now able to properly care and provide for her child, which the respondent is not able to do.

The respondent made return to the petition and denied its allegations. He further declared that Arphenia left his home of her own free will and desire, and, when leaving, was told that if she became dissatisfied at the hospital that she could again return to his home and live there permanently; and respondent claimed that the infant was willingly given to him by Arphenia for the reason that she would be unable, financially, to care for her, and that the deed was made pursuant to that agreement. The respondent also claimed that he is amply able to care for the child, that he and his wife are very much attached to her; and he asserted that Arphenia was without means with which to properly care for the baby.

The matter came on for hearing before Hon. Martin F. Ansel, County Judge of Greenville County. Affidavits from all the parties and from other persons were offered by both sides. Judge Ansel, on April 25, 1925, made his order, dismissing the petition and directing that the child should be retained by the respondent, but provided that the mother should be allowed to visit her child as often as she might

desire at the respondent's home. From this order the peti-
tioners have appealed to this Court, and have made five ex-
ceptions. It is not necessary to state in detail these excep-
tions, for through all of them run only two main charges:
(1) That the deed of Arphenia to the respondent should
be set aside; and (2) that the custody of the child should
have been awarded to the mother.

The reasons for the conclusion of Judge Ansel, as set
forth in his order, which should be reported, are: (1) "The
Court would hardly be justified in setting aside the deed
upon the statements made in the affidavits," and (2) that he
was "satisfied that the respondent is well able and willing
to raise the child, and give it all the care and attention due
to an infant of that age—the child is not a nursing child,
but is being raised on the bottle."

The County Judge properly held that the question
for him to determine was: What is for the best in-
terest of this child in the circumstances? This Court
has held so often, in these unfortunate cases, that the main
thing to be considered in reaching a determination is the
best interest of the infant, that it is needless to even cite au-
thority as to that principle.

With the announced and reasonable principle as our
guide, let us consider the undisputed facts, as stated
above, and the matters in dispute between the parties,
as shown in the record. While we should turn to cases al-
ready decided by this Court for aid in coming to a right
conclusion, we must be at all times reminded that each con-
test involving the custody of an infant has its own peculiar
and special facts and surroundings, and these should always
be carefully examined into.

Adverting first to the question, is it best for the infant
that her custody be awarded to the mother or the grand-
father? We are of the opinion that the County Judge was
in error in the conclusion reached by him. It appears to us
that in reaching his decision on that point, he was influenced

too much, perhaps, by the written instrument which Arphenia had signed. Forgetting for a while that she signed the paper, let us review briefly the facts as brought out by the affidavits. On the one hand is a grandfather with a wife, who is in bad health, and three children, one of whom is a cripple. The family are good people; the respondent owns some property and a pleasant home; he, his wife and children are much attached to the little girl. Some of the disadvantages of awarding the child to him, occurring to us, are that the grandfather and grandmother are fast approaching old age. Their children will soon be grown and in all likelihood will make new homes for themselves. Many changes are likely to occur in that good home within the next 19 years, at about which time the little girl will arrive at the age of maturity. On the other hand, a young mother, in good health, with a father, aunt, and uncle by marriage, who are able and willing to assist her in caring for her child, is asking the Court to restore to her her babe.

So often, in cases of this kind, grave charges by each of the parties are made against the adverse claimant, that it is refreshing in this case to note that both sides admit that the petitioners and the respondent are persons who are well behaved in all respects. It is not controverted that Arphenia is a pure young woman, of high Christian character. This being true, she is entitled to the custody of her child, unless some legal obstacle stands in the way.

Is the fact that the respondent, attached to the baby, already having the custody, is more able, in a financial way, to look after the rearing of the child, a legal obstacle? Answering that question in the negative, we call attention to this elementary principle of the law:

"A parent who is of good character and a proper person to have the custody of the child and reasonably able to provide for it is entitled to the custody as against other persons, although such others are much attached to the child, and the child is attached to them, and prefers to remain with them,

and they are in all respects suitable to have the custody of the child and able to support and care for it, and even though they are of larger fortune or able to provide for the child more comfortably than the parent, or to care for it better or to give it a better education than the parent can afford." Cyc., Volume 29, 1590.

It is not necessary in this day to discuss the overwhelming influences of the love of a good mother for her child. The respondent, as husband of a good wife, who has been mother to four children, will realize this. It is not given us to read the future; but one thing we can foresee, that, when wealth and property have been lost or dissipated, whatever good may come or ill may fall, the influences of a Christian mother, even when she has passed away, will comfort, strengthen, and bless her son or daughter. This loving influence will be worth more to little Jessie Lee than all the wealth, comforts, pleasures, and education she may receive at the hands of even a devoted and indulgent grandparent.

It should be remembered, too, that a child has an interest in the parent; that this interest will increase as the years go by; that the child, when grown to maturity, and later, when many years have come to it, will wish to look back with pleasant recollections upon the parent's life. The child will want to say some day that the parent's life was good and pure. A little girl to rear and train will give the mother much to really live for, will tend to strengthen her character, and enable her the more to realize the duties and responsibilities of womanhood. The child has the right to have and know the love and influence of a good mother, that she some day may be likewise.

It is suggested that, aside from the execution of the purported deed, the mother, having permitted her child to remain some four or five months in the custody of the respondent, is, in a way, estopped from now seeking to take the baby back to her bosom. In the case of *Ex parte Reynolds,* 53 S. E., 490; 73 S. C., 296; 114 Am.

St. Rep., 86; 6 Ann. Cas. 936, children were restored to a
father, though it was shown that he had left them in the
custody of relatives for around two years. In the case of
*Busbee v. Reese,* 118 S. E., 185; 125 S. C., 121, a child
was returned to the father, although he had left it with the
grandmother for around two years. In the case last men-
tioned, Mr. Justice Marion, in a forceful tribute to the love
and influence of parental care, quoted, with strong approval,
the following from the opinion of Mr. Justice Woods in
*Ex parte Davidge,* 51 S. E., 270; 72 S. C., 18:

"But none will deny that ordinarily the most valuable
possession of a child is the love and care of its parent, and
its most sacred right is its right to live under its father's
roof."

The father being dead, there seems to us to be more rea-
son why the child should live in the home of the mother.
The mother claims that the leaving of the child by her with
the grandfather was intended only as a temporary arrange-
ment. The respondent admits in his return that it was the
understanding that if his daughter-in-law became dissatis-
fied at the hospital that she could again return to his home
and live there permanently. This admission on his part
compels the inference that he, too, regarded the matter of
the child being in his custody as temporary. We think the
facts are not strong enough to establish such an estoppel as
would preclude Arphenia from bringing this proceeding.

The vital question before us is this: Does the execution
by Arphenia of the purported deed warrant the Court in
withholding from her the little girl? She contends that this
paper was not fairly and honestly made. The respondent
asserts to the contrary. The paper was made under the au-
thority of Sections 5563 to 5567 (both inclusive) of
Volume 3 of the Code of 1922. The first section referred
to permits a mother, though she be herself a minor,
the father being dead, by her deed, executed and recorded
according to law, to dispose of the custody and tuition of

her child for and during such time as the said child may remain under the age of 21 years. The General Assembly, recognizing the right not only of the parent, but that of the child, provided in this section, that nothing therein should be construed to abrogate, lessen, or interfere with the right and duty of a Court of competent jurisdiction at any time to transfer and assign the custody of a child for its best interest. Section 5563, Volume 3, Code of 1922.

Counsel for respondent take the position in this 4, 5 Court, and it appears that they do not now think that they took such position before the County Judge, that no action having been brought to cancel the deed, and the same not having been declared void by a proper or legal proceeding, the deed is valid and binding upon all persons as declared by the section next succeeding that last cited. In paragraph 111 of the petition herein, Arphenia alleged that she was over-persuaded, coerced, and intimidated to sign this paper, and she demanded that the same be declared to be a nullity. We regard this as being sufficient to attack the validity of the deed. The respondent must have thought so in the hearing before the County Judge, for, at that time and place, he introduced the deed in evidence and filed an affidavit from Col. Dean, who drew and witnessed the signing of the paper, as to the circumstances attending the execution. The County Judge, evidently, regarded the validity of the instrument as a question for him to determine, since he expressly stated in his order that he did not feel justified in setting it aside upon the statements made in the affidavits. In this Court the petitioners charge error on the part of the County Judge in failing to hold that the deed to the child was void. At the bar of this Court, attorneys for both sides argued the question. We think a direct attack has been made against the instrument, and it is our duty to pass upon its validity.

In the evidence submitted, there is no conflict as to these facts: That Arphenia, when she signed the paper, was re-

siding in the home of her father-in-law; that he had great influence upon her, for at his instance she made an affidavit derogatory to her own father, who had applied for administration on the estate of her husband; that she thought, for some reason or other, that she had to go out into the world and make her own living; she was grief-stricken at the very recent death of her boy husband, who had not lived to feel the touch of his baby's tender hands; she was a mere child herself, being just 17 years old; she had little, if any, experience in world affairs; her one thought was her desire to provide for the welfare of her infant. She has sworn that she had no idea at the time of the execution of the paper that she was signing an instrument giving her child to the respondent permanently.

The only evidence we find in the record controverting this testimony of Arphenia is the affidavit of the respondent that the paper was freely signed by Arphenia. His testimony is weakened, to some extent, by two statements appearing in his verified return: (1) That Arphenia was told by the respondent that if she became dissatisfied at the hospital that she could again return to his home and live there permanently; and (2) that Arphenia gave the child to him because she would be unable, financially, to care for her. That the child was given and accepted under the deed for the main reason that Arphenia was not then in financial position to care for her, that he knew (as it is shown he did know) that his daughter-in-law was arranging to prepare herself where she could earn money, coupled with the fact that he expected her, when she so desired, to return to his home where the baby would be, tend to corroborate Arphenia's statement that she only intended to execute a paper which would leave her child in the custody of the respondent until she could provide herself for the little one's care.

The affidavit of Col. Dean does not answer the sworn statement of Arphenia. His statement simply shows that the deed was prepared by him at the

instance of the respondent, evidently, when Arphenia was not present; that thereafter the paper was executed in the presence of Mr. Vaughn and himself; that he "had no knowledge of any force or undue influence being exerted over the said Mrs. Watson, and she appeared perfectly willing and satisfied with the execution of said deed." Col. Dean does not dispute the statement of Arphenia that the paper was not read by her or read to her. Certainly, no "undue influence" was exerted over Arphenia in the presence of Col. Dean, and this Court knows that no wrongful pressure upon her was known to him, for if there had been anything of that kind to occur in the presence of Col. Dean, or to his knowledge beforehand, the paper would not have been executed in his presence. Counsel for the appellants has rightfully admitted that there is no question as to the conduct of Col. Dean in the matter, and this Court is assured of that without admission from any one. But the "undue influence" was likely exerted before the parties went to the office of Col. Dean. It is a well-known fact that reputable attorneys are often called upon to draw instruments and attend to the legal execution thereof without information as to things which may have been done, and words which may have been spoken, prior to their being approached with regard to the preparation of the instruments.

This Court will assume that no good mother will 7-9 very readily and willingly give up permanently her baby. The burden is, and should be, upon him, who would show otherwise, to prove his contention fairly and strongly. We do not think the respondent has done so in this case.

In justice to the respondent, we wish to state that 10, 11 we sympathize with him and his family in this matter, and we can see how easy it was for him, in his love for his little grandchild, the only child of his dead boy, to say words which might influence his daughter-in-law, since she was going away from his home, to leave the little

girl in his hands. But we must hold that under the peculiar circumstances in this case, the disadvantages surrounding the child-mother, and the confidential relationship between the parties, under the authority given to the Court in the very same action, by the terms of which the writing was executed, that the alleged deed should not stand, and that this Court has the right and duty to transfer and assign the custody of the little girl for her best interest. That "best interest," it appears to us, requires that the custody of the child be awarded to the mother.

With due regard, however, to the duty of this Court to the little girl, we must see that her maintenance, care and comfort are assured. It is clear from the statements of the petitioners that at this time Arphenia, by herself, cannot guarantee that the little one will have even the necessaries of life. Her aunt, who has come to the Court along with her niece as a petitioner, has announced that she is both willing and able to assist Arphenia. Like statements have been made by the husband of this aunt and Arphenia's father. There is, though, no legal, and perhaps no moral, responsibility on the part of these three, who come to the Court in a way as volunteers. Doubtless, their intentions are good, and the Court has no right to question these intentions; but we must safeguard the rights of the little girl, who, at this time, like the petitioners and respondent, are within the jurisdiction of the Court and subject to its orders. The petioner, Mrs. Jennie Green, should be required to enter into proper bond, with sufficient surety, either by personal sureties, or by first mortgage of real estate, guaranteeing that she will see to it that the little girl is properly provided with the necessaries of life.

Feeling, too, that the respondent and his family are to be commended for their devotion to the little girl, knowing that they have a deep interest in her welfare, and realizing that the child should have an interest in these relatives, this Court also holds that these relatives shall have the right to visit

the little girl in the home her mother shall keep her in, and the right occasionally to have the little girl visit their home, at reasonable and seasonable times; it being understood, however, that these relatives shall not attempt to interfere with the right of the mother as custodian. We hope, as we have good right to believe, that this little child, loved so greatly by all the parties to this proceeding, and those who are closely related by blood to these parties, may be the means of effecting full reconciliation between all those who, because of their love for her, have been antagonistic to each other.

Let it be fully understood by all the parties to this proceeding that the little girl has been made, in a way, a ward of this Court; that full right is reserved to alter, change, or modify the judgment of this Court at any time it·may appear to the Court that it is proper so to do, and the little girl must remain within the jurisdiction of the Court.

It is, therefore, ordered and adjudged that the order of his Honor, County Judge Martin F. Ansel, in this proceeding be, and the same is hereby, reversed on the conditions herein stated; that upon the petitioner, Mrs. Jennie Green, filing with the Clerk of Court of Greenville County her bond, in favor of the said Clerk, and his successors in office, with proper surety, as indicated hereinbefore, to be approved by said Clerk, in the sum of $1,000.00, conditioned that the said Mrs. Jennie Green will see that Jessie Lee Watson, an infant, is furnished until she shall arrive at the age of 18 years with the necessaries of life, including medical attention, that the custody of the said Jessie Lee Watson be, and the same is hereby, awarded to her mother, the petitioner, Arphenia Jennie Watson.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS, COTHRAN and STABLER concur.