December 11, 1944. *Page 459 
The question to be determined in this controversy is whether the appellant, Annie Mae Smith Foster, is the legitimate child of Hosea Smith, who died intestate on January 8, 1944. Claiming to be his daughter and sole heir-at-law and distributee, appellant applied for letters of administration. Respondent, a sister of Hosea Smith, filed with the Probate Court a petition for letters of administration wherein she denied that appellant was the legitimate child of deceased and contested the right of appellant to letters of administration, contending that the sole heirs-at-law and distributees of deceased were his brothers and sisters. The Probate Judge of Spartanburg County, after hearing considerable testimony on the issue thus presented, held that appellant as a legitimate child of deceased and issued to her permanent letters of administration. On exceptions by respondent, the matter was heard by the Circuit Judge, who reversed the order of the Probate Court and directed that letters of administration be issued to respondent. The Circuit Judge held that appellant was an illegitimate child and that the brothers and sisters of the deceased constituted his sole heirs-at-law and distributees. From this order of the Circuit Court appellant has appealed.
Hosea Smith and Sarah Jenkins, both residents of Spartanburg County, were duly married in 1921. At the time of this marriage Sarah Jenkins had two children. The older was a boy approximately eight years of age, who never resided with his mother after this marriage and subsequently died. It is not contended that Hosea Smith was the father of this boy. The younger was appellant, then a baby about one year old, who was known as Annie Mae Smith. Following this marriage appellant lived with Hosea Smith and his wife for approximately a year, when the mother died. After her death, Hosea Smith never remarried and lived with his *Page 460 
relatives, and appellant lived with her maternal grandmother. Appellant married in 1938.
The Probate Judge found from the evidence that Hosea Smith was the father of appellant, that he recognized and acknowledged her as his daughter, and that fact induced him "in part at least" to marry appellant's mother. These factual findings were not questioned in the exceptions by respondent to the order of the Probate Judge, and at the hearing before the Circuit Judge it was agreed that these exceptions only raised legal questions. It seems to be conceded that appellant's claim of legitimacy depends upon the construction to be given to the following paragraph of Section 255 (19) of the Code of 1942; "Warrants in bastardy shall be issued on voluntary complaint by mother or by county commissioners that child is likely to become a county ward. When issue of paternity is tried and found against defendant he shall be fined not more than ten ($10.00) dollars, shall pay the woman two hundred ($200.00) dollars, and give bond that the child not become a public charge, and shall stand charged with the maintenance of the child as the court may order. Action must be brought within three years after birth. If parents subsequently marry, thechild becomes legitimate as if born in lawful wedlock. The putative father of any illegitimate child may apply by petition in writing to the children's court of the county in which the father may reside, praying that such child may be declared legitimate. And if it shall appear that the petitioner is reputed the father of the child, the court may thereupon declare and pronounce the child legitimate; and the clerk shall record the deed. If any person shall willfully abandon his family without providing adequate support for his wife, and the children which he may have begotten upon her, he shall be guilty of a misdemeanor." (We have italicized a certain portion so that it may be conveniently referred to in discussion.) *Page 461 
Before undertaking to construe this statute, it may not be amiss to digress and briefly refer to some phases of the common and statutory law governing the legitimacy of children. Under the common law, legitimate children were those born in lawful wedlock. Children not so born were held illegitimate, even though their parents intermarried after their birth. The power of the Legislature to legitimate or provide for the legitimation of bastard children has long been recognized both in England and in this country. In Davis v. Milford, 85 S.C. 504, 67 S.E., 744, this Court said: "The power of the Legislature to legitimatize a bastard for all purposes as if he were a child of lawful wedlock is plenary, and, by a statute which confers legitimacy without limitation, the bastard becomes a legitimate child for all purposes and in his relations with all persons."
Many, if not most, of the states have passed statutes abrogating the common-law rule. These statutes very considerably in their language. Under some an illegitimate child is legitimated where the parents intermarry after the birth of the child, although some of the statutes contain an additional requirement that the paternity of the child be recognized or acknowledged by the father. Other statutes provide for the legitimation of an illegitimate child by the father's acknowledgement of such child as his in accordance with certain requirements, even though the father does not intermarry with the mother. An Arizona statute declares that "every child is the legitimate child of its natural parents."Levy et al. v. Blakely, 41 Ariz., 327,18 P.2d 263, 265.
Turning now to the statute under consideration, if only the italicized portion is considered, we think the meaning is clear, although it is rather briefly expressed. It provides: "If parents subsequently marry, the child becomes legitimate as if born in lawful wedlock." The *Page 462 
Probate Court has found as a fact that Hosea Smith was the father of appellant. When the father and mother married after the birth of appellant, under the express terms of the statute she became legitimate "as if born in lawful wedlock." It is suggested that this construction would make any child had by the woman prior to the marriage legitimate, although the husband was not the father. But the word "parents" as used in this sentence restricts the meaning to only those children had by the woman at the time of the marriage of which her husband was the father. To illustrate, at the time of this marriage, Sarah Jenkins had a boy who admittedly was not the son of Hosea Smith, and, therefore, he was not the "parent" of this child.
North Carolina has a statute which, although differently expressed, has the same meaning as the one under consideration. That statute provides that "when the mother of any bastard child and the reputed father of such child shall intermarry or shall have intermarried at any time after the birth of such child," C.S.N.C. § 279 now G.S.N.C. § 49-12, the child shall be deemed legitimate.
Respondent contends, and the trial Judge held, that when this entire section is considered, two methods of legitimation are provided: (1) Where the father is unwilling to support the child and denies his paternity, he may be prosecuted within three years after the birth of the child and if on trial he is found to be the father, the child becomes legitimate provided the "parents subsequently marry." It is contended that under this method a previous successful prosecution is essential in order to legitimate the child by marriage of its parents. (2) If a putative father desires to legitimatize a child born out of wedlock, he may petition the court to be permitted to do so, and the court may declare such child legitimate if it finds that the petitioner is the reputed father of such child. After so construing the statute, the trial Judge said: "In either case an affirmative act must *Page 463 
be taken by the mother or the father, or both, in order to make a child born out of wedlock the legal heir of its reputed father." As there was no prosecution in the instant case and the father never filed any petition asking that the child be declared legitimate, it is said that neither method provided by the statute was ever pursued and no claim to legitimacy under the statute can be sustained.
If we accept this construction of the statute, under the first method suggested, the legitimacy of the child would depend upon the attitude of its father. If the father, desiring in a measure to atone for the sins of the past, voluntarily fulfilled his moral obligation to support and maintain the innocent and unfortunate child and married its mother, the child would not become legitimate. But if he denied his paternity and refused to support the child until compelled to do so by the court and thereafter married the mother, the child would become legitimate. We think it is clear that no such illogical and unjust result was intended.
We think the first portion of the statute was designed to protect the mother, the child and the public by requiring an unwilling father to fulfill his moral obligation. As this procedure requires a trial on the issue of paternity, the reason for the limitation on the time for the commencement of the prosecution is obvious. When there is no dispute as to the paternity of the father and he voluntarily fulfills his obligation, prosecution is wholly unnecessary. We do not think that legitimation of the child through the subsequent marriage of the parents is contingent upon the previous prosecution of the father. The word "subsequently" as used in the italicized sentence refers to marriage subsequent to the birth of the child and it is not required that the marriage be subsequent to a prosecution. Where there is no dispute as to paternity, the only affirmative act required of the parents is marriage. Whether the father has previously voluntarily or involuntarily fulfilled his obligation, when he *Page 464 
marries the mother of the child he has acknowledged his obligation and the usual parental responsibilities and privileges follow. It has been said that the mother is always known, but the father is not. But when the father marries the mother and recognizes and acknowledges the child as his own, he thereby makes himself known.
It is true that the latter portion of this section provides a method by which the child may be legitimated, but there is nothing in the context of the statute, or in its purpose, which indicates this to be the exclusive method of legitimation, or which in any wise restricts the part of the act by which marriage has the effect of legitimation. While not necessary to the decision of this case and without undertaking to so hold, it may be that this portion of the statute was designed to provide for legitimation on the petition of the father when he did not marry the mother of the child.
We do not deem it necessary to determine in this case whether a statute of the type under consideration should be strictly construed as being in derogation of the common law, or liberally construed on the theory that it is remedial in nature. On this question there is a diversity of opinion. See 7 Am. Jur., 661; 10 C.J.S., Bastards, § 12, p. 63;Davis v. Milford, supra, 85 S.C. 504, 67 S.E., 744. In this case we think the result would be the same, whichever rule is applied.
It appears that the statute herein quoted and discussed is part of an act enlarging and defining the duties and powers of the Probate Court in relation to minors in certain counties. We are not called upon to determine whether it is a general statute; nor is there any question of the constitutionality of the statute raised or discussed.
Judgment reversed.
MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur. *Page 465