16068

WILSON *et al. v.* CLARY *et al.*

(47 S. E. (2d) 618)

*Messrs. John M. Schofield,* of Walhalla, and *John H. Bramlett,* of Greenville, for Appellants,

April 22, 1948.

STUKES, Justice:

Beryl Eugne Clary (Betty Ann Wilson) was born in Greenville on the 23rd day of March 1934. When she was only about three months old her mother died and her father, Paul I. Clary, gave the infant child to Mr. and Mrs. Ira T. Wilson, a deaf mute couple without children of their marriage. The child is normal and had reached the seventh grade in school at eleven years of age when the court proceedings under review were had in 1945.

On March 4, 1943, the father, who was then in the United States Navy, executed a deed of the child to the Wilsons whereby he committed to them the care, custody, maintenance, education and support of the child during her minority, quoting, "together with all rights, privileges, benefits and considerations that should be exercised by me (the father-grantor) as parent, over and in respect to said child." In the nature of an habendum the deed also contains the following provision: "To Have And To Hold the said child * * * against me and all persons claiming or to claim any interest, right or privilege through me in and to the said child * * *." See, however, Sec. 8633 of the Code of 1942 and *Watson v. Watson,* 134 S. C. 147, 132 S. E. 39.

In May 1943 Mr. and Mrs. Wilson filed their petition in the Court of Common Pleas, which was usual in form, for

the legal adoption and change of name of the child. A guard-, ian *ad litem* was appointed by the resident Circuit Judge and decree followed wherein was recited the precedent proceedings, that a hearing was had before the court whereupon it was ordered that the child should be the adopted child of petitioners with the right of inheritance and that her name be changed to Peggy Ann Wilson. This decree was dated May 29, 1943 and duly enrolled in the judgments of the court. It is noted that it fixed the name as Peggy Ann Wilson. However, the precedent deed referred to the child as being at that time called "Bettie Peggy Ann Wilson" and the name in the present proceedings is as was first stated above, *viz.*, Beryl Eugene Clary (Betty Ann Wilson). In the testimony she was usually referred to as Betty. This confusion is of no present consequence.

Shortly after his discharge and return from service the father, apparently by the aid of the Department of Public Welfare of Greenville County, undertook to deprive the Wilsons of the custody of Betty and he filed his unverified petition in the Juvenile Court of Greenville County on November 5, 1945, alleging that Betty was neglected and was under such improper and insufficient control as to endanger her morals, health and general welfare and particularly that she was abused and in danger of becoming delinquent, and of becoming emotionally upset and of impaired health, the latter because of the conditions existing in the home of her foster parents, the Wilsons. The Judge of the Children's Court immediately issued an order awarding the custody of the child, pendente lite, to the father, and summons was issued to the Wilsons. They appeared by two attorneys who were other than the attorneys who now represent them upon this appeal. The attorneys represented the Wilsons at the hearings, prdouced witnesses (including their clients) and cross-examined the adverse witnesses. There is no question of their full and persistent participation in the proceedings.

A great deal of testimony was taken in the Children's Court, cf social workers and neighbors, of Betty's Sunday

School and public school teachers, some tending to prove unfavorable conditions and treatment of the child in the Wilson home and some, adduced by the adopted parents, which tended to prove otherwise. Betty also testified. There was indeed almost total conflict in the testimony. There was extensive cross-examination of petitioner's witnesses by the Wilsons' then counsel and the court also participated in the examination and cross-examination, the latter particularly with respect to respondents' witnesses. No counsel represented the petitioner and he himself took part to a limited extent in the examination and cross-examination of the witnesses.

The hearings were concluded in the Children's Court on November 30, 1945 and thereafter, on February 21, 1946, the Judge awarded (by formal order) custody of the child to her paternal grandmother, Mrs. Eugenia McGuyre, and provided that, quoting, "the court shall retain joint jurisdiction with her."

It appears that under the temporary order pendente lite of award of the custody of the child (and the subsequent order recites) that the latter appeared to be happy with her grandmother and the arrangement, quoting, "seems to be satisfactory with Mr. and Mrs. Wilson, so long as they are allowed to visit said child at reasonable intervals." By final provision of the order permission was given Mr. and Mrs. Wilson to visit the child at regular intervals, not exceeding once a week.

An order of the Children's Court supplemental to that just reviewed recites that it was rendered after hearing on May 31, 1946 upon motion of the attorneys for Mr. and Mrs. Wilson which alleged changed conditions resulting from the fact that meanwhile the father, Clary, and his mother (to whom custody had been awarded) had moved from Greenville and the child was then with her paternal aunt, Mrs. Eva (G. H.) Hudson, and the latter had petitioned the court for the custody of Betty. Considerable testimony (which is not con-

tained in the appeal record) was taken in behalf of the petitioner, none for the Wilsons. It was found that it would be to the best interest of Betty, then called Beryl Eugenia Clary, that custody of her not be returned to the Wilsons. Further provisions of the order are quoted as follows: "A sufficient showing has not been made to require a change in the order of this court dated February 21, 1946. It is therefore ordered that the order of the court dated Feb. 21, 1946 shall remain in full force and effect."

It is noted that thus a strange result in the proceedings' in the Children's Court has come about. Its order awarded custody to Mrs. McGuyre upon the condition, quoted hereinabove and now again, that "the court shall retain joint jurisdiction with her." It was established in the supplemental order that Mrs. McGuyre had moved from Greenville. Yet the original order whereby custody was awarded to her was re-affirmed. However this court is not concerned in this appeal with the apparent paradox for the reason to which reference will be made directly in the disposition of the exceptions.

Meanwhile, and months before the supplemental order just discussed, the attorneys for Mr. and Mrs. Wilson, appellants here, filed on February 26, 1946, a petition in the County Court of Greenville for a writ of certiorari to the Children's Court whereby its judgment and proceedings should be reviewed by the County Court in the nature of appeal to the latter. Appropriate writ was issued on the same day and certified return of the record and proceedings was commanded of the lower court. The Judge of the County Court passed an order on February 7, 1947 wherein it was recited that he had formerly appeared as an attorney (apparently only in the adoption proceedings) and was disqualified, and that on motion of the then and present attorneys for the appellants in this Court, the proceedings on certiorari were transferred to the Court of Common Pleas of Greenville County. On August 5, 1947, the latter Court decreed as follows: "This matter comes before this court by way of

certiorari to the Juvenile Court of Greenville County. Petitioners, by their writ, pray that the judgment of that court be reversed and set aside. After a careful review of the record before me, this court is of the opinion that it is for the best interest of the minor child involved that the judgment of the Juvenile Court be sustained. It is so ordered."

Certiorari was improvidently issued. The petition therefor contained allegations only pertinent to appeal. The concluding provision of Sec. 256 of the Code follows: "All appeals from the children's court established under the provisions of this section shall be made to the circuit courts of Greenville County." However, it was treated as an appeal in the lower court and here.

Children's Courts, so designated, are authorized as divisions of the Probate Court in counties of population of 85,000 to 100,000 by Sec. 255 of the Code of 1942. *Foster v. Rowland,* 205 S. C. 457, 32 S. E. (2d) 375. The following section, No. 256, provides additionally for the Children's Court of Greenville County and adopts the consistent provisions of Sec. 255. The latter refers in some of its provisions to the court as the "juvenile" court. Whence, doubtless, the varying appellations of "Children's Court" and "Juvenile Court" in the record of the instant proceeding and the variance is immaterial. Reference may be had to the cited statutes for the jurisdiction, power and duties of the court and its officials. They need not be here discussed.

From the quoted order of the Court of Common Pleas dated August 5, 1947, Mr. and Mrs. Wilson have appealed to this Court. They are represented by substituted counsel as has been said. There was no appearance *contra.* The exceptions will be reproduced and treated seriatim with observation of appellants' Roman numbering.

I. The Children's Court of Greenville County does not have jurisdiction of the cause of action or the parties hereto.

This exception falls so far short of the requirements of rule 4(6) of this Court that it need not be considered. It cannot be reasonably contended that it is a proper exception.

II. The Children's Court of Greenville County was divested of any jurisdiction it might have had by the issuance of the writ of certiorari, and therefore was entirely without jurisdiction at the time of the hearing on May 31, 1946.

It is equally plain that this exception should be sustained if such action were not futile because it would not affect the status of the custody of the child, the matter in issue; this because the supplemental order, following the hearing on May 31, 1946 in the Children's or Juvenile Court, which was long after the issuance of the writ of certiorari by the County Court, undertook to make no change in the former order of the Children's Court; indeed, the substance of it is that the former order, dated February 21, 1946, should remain in force. The rule is that issuance of certiorari suspends for the time proceedings in the subject court. 14 C. J. S., Certiorari, § 108, page 245.

III. The Court erred in allowing Mrs. Adams to testify without submitting to cross examination.

IV. The Court, a Court of Equity, erred in allowing Mrs. Adams to take part in the proceedings.

These exceptions may properly be considered together. Explanation is necessary. Mrs. Adams was a representative of the County Department of Public Welfare and had, along with other representatives of that agency, investigated the home, surroundings and conditions of the child whose custody is at issue. They had interviewed, and they produced neighbors and others, including the subject child, as witnesses. Mrs. Adams should not have been offered or sworn as a witness for she declined to testify from her own knowledge but referred to the witnesses who followed. Her statements were objected to by appellants' counsel as hearsay,

and as to the bulk of them the objection was in effect sustained. The brief points to nothing prejudicial to appellants which resulted from Mrs. Adams' appearance and we have found nothing in the record. She came nearer assuming the rôle of counsel than witness. There was no counsel representing the Department of Public Welfare.

V. The Court abused its judicial discretion in granting custody to the grandmother.

This exception, like the first, is patently inadequate to allege error under the applicable rule and will not be discussed further than to say that there was ample supporting evidence for the factual conclusion which dictated the decision of the Children's Court to award the custody of the child as it did. The paramount consideration in such cases is, of course, the interest and welfare of the child. *Graydon v. Graydon,* 150 S. C. 117, 119, 147 S. E. 749; *Koon v. Koon,* 203 S. C. 556, 28 S. E. (2d) 89.

VI. The Court erred in not rectifying its abuse of judicial discretion in second order after it became obvious that the girl's blood relatives were undesirable and unreliable.

The foregoing comment concerning exception V also requires the overruling of No. VI for the reasons stated. The evidence adduced by the respective contestants for custody may fairly be said to have been crimination and recrimination. However, we think the weight of it supported the decision. It is not amiss to say that the only hope apparent for the welfare of the little girl is the future, continued supervision of her surroundings by the social agencies concerned, which should carefully and promptly act as changing circumstances may require in her interest. This exception has been considered as if it were properly taken. But the "second order" to which it refers was the result of the hearing in the Children's Court, sought by appellants, during the pendency of the proceeding upon certiorari in the County Court and the Court of Common Pleas, which deprived the Children's Court of jurisdiction at that time. This is pointed out by appellants themselves in exception II, above.

The course indicated by the discussion is followed and the exceptions are overruled. However, the argument has gone afield of the exceptions and requires further consideration.

Appellants announce in the brief that they raise for the first time in this Court the question of the jurisdiction of the Children's Court, and they launch into a challenge of the constitutionality of the statutes which create the Court and thereupon base their allegation of lack of jurisdiction. But the constitutional questions argued before this Court were nowhere raised in the proceedings in the lower court, so far as the record discloses, and are clearly not available on appeal.

"The rule applicable to appellate procedure generally, that objections not raised in the lower court cannot be relied on in the appellate court * * * governs the review on certiorari; and, as a general rule, questions not raised or ruled on below, or alleged erroneous action as to which no objection was made, cannot be presented to, or considered by, the reviewing court. This rule applies to objections, not raised or ruled on below, as to the constitutionality of a statute," etc. 14 C. J. S., Certiorari, § 149, page 286. Questions raised for the first time in brief of counsel for appellant will not be considered on review (on certiorari). *Payne v. Cheshire,* 27 Ga. App. 324, 108 S. E. 207. See generally on the unavailability on appeal (which this is in effect, in view of the contents of the petition for certiorari) of points not raised or decided below, the South Carolina decisions digested in 2 South Eastern Digest, Appeal and Error, Key 169 *et seq.*

The cases are catalogued under the following caption on page 758 of 2 S. E. Dig.: "A question not raised in the trial court will not be considered." And at page 760: "A question not raised nor considered below cannot be considered here." And, immediately applicable now, Key 170(2): "Where constitutionality of statute is not raised in trial court, it cannot be considered upon appeal."

· Appellants would evade this rule upon the ground that their objection is to the jurisdiction of the trial court, which is an exception. But the circumstances here do not present a true exception. The creating statutes of the trial court quite fully give it jurisdiction of such a case as this. The attack upon the constitutionality of the statutes comes too late, first upon appeal. That is an impassable barrier to appellants before they reach the attempted point of attack on the jurisdiction of the court. They encounter a road-block which has resulted from their chosen course. Personal jurisdiction of the parties is not seriously questioned; nor could it be under the circumstances of this case, which have been related. Moreover, only jurisdiction of the subject matter could be considered for the first time at this stage and it is out of reach of appellants because of their failure to timely make their constitutional attack on the trial court.

Illustrations of this decisive consideration are found in the cases of *Frazee v. Beattie,* 26 S. C. 348, 2 S. E. 125, 126, where it was said: "In *Tompkins v. Augusta & Knoxville R. R. Co.,* 21 S. C. [420], 421, it was held that, where the constitutionality of a statute was not raised in the circuit court, nor by any exception, but is raised for the first time in the argument submitted here, it is not properly before this Court for consideration. This principle, it seems to us, if enforced, would exclude here this constitutional question, as it was not before the circuit judge, nor is it expressly or distinctly raised in the exception above as to the jurisdiction of the trial justice"; and *Southern Power Co. v. Williams,* 85 S. C. 172, 67 S. E. 136, 139, quoting, "The appellant is not in a position to attack the constitutionality of the provision of said section * * * for two reasons: * * * (2) because the record does not show that the presiding judge was requested to rule upon such question. (*Rippy v. [Southern] Ry. Co.,* 80 S. C. 539, 61 S. E. 1010, 21 L. R. A., N. S., 601)."

To sum up: Jurisdiction of the trial court is attacked for the first time on appeal to the court of last resort and upon

the ground of the alleged unconstitutionality of the statutes whereby the trial court was created. There was no presentation of this important constitutional question in the trial court or in the intermediate appellate court, which in this instance was the Court of Common Pleas. It is quite clear that the point is made too late and that this court cannot consider the contention. Appellants had a suitable vehicle for review of the jurisdiction of the Children's Court when they obtained the writ of certiorari but they used it instead to press an appeal on the merits. It is proper that they be confined here to consideration of the latter.

Appellants argue further questions which are beyond the scope of the exceptions but will nevertheless be disposed of briefly. First they assert that the adoption proceedings in the Court of Common Pleas in 1943 constituted an assumption of jurisdiction by that court and in the absence of appeal from the order there, it stands as the law of the subject matter. Again, the point was apparently not raised in the lower court, certainly not adjudicated, and it cannot properly be now agitated.

The point is made that the subject of custody of children is not within the jurisdiction of the Children's Court under the statutes whereby it was created and its jurisdiction defined. Still again, the point was not raised or decided below and this Court cannot properly determine it on appeal. Parenthetically, the act does provide jurisdiction of custody. The same is applicable to the objection that the petition in the Children's Court was unverified and thereby failed of compliance with the requirements of the statutes relating to the Court. Appellants responded to the summons which was issued pursuant to the petition and participated very actively in the extended hearings in the trial court. It is much too late for them to find flaws in the petition.

Judgment affirmed.

BAKER, C. J., and FISHBURNE and TAYLOR, JJ., concur.

OXNER, J., disqualified.