488 S.E.2d 878

**John DOE, Respondent,**

**v.**

**S.B.M., Appellant.**

**No. 2671.**

Court of Appeals of South Carolina.

Heard May 6, 1997.

Decided June 9, 1997.

O.W. Bannister, Jr., of Hill, Wyatt & Bannister, Greenville, for Appellant.

Douglas A. Churdar, Greenville, for Respondent.

ANDERSON, Judge:

John Doe (Doe) filed this action alleging two theories: (1) Publication of Private Facts (the tort of the Right to Privacy) and (2) Outrage (the tort of Intentional Infliction of Emotional Distress) against S.B.M. seeking a permanent injunction and damages. After S.B.M. defaulted, a damages hearing was held and Doe was awarded a total of $30,204.23 damages. We affirm.

## *FACTS/PROCEDURAL BACKGROUND*

In the spring of 1994, Doe and S.B.M. were involved in a homosexual relationship and lived together for approximately three weeks in Greenville, South Carolina. Doe ended this relationship in April of 1994. Thereafter, S.B.M. contacted Doe's employer and informed him of the parties' homosexual relationship. Further, S.B.M. stole Doe's mail and rolodex, which contained the names of Doe's insurance clients. S.B.M. threatened to call Doe's clients and inform them Doe is a homosexual. According to Doe, S.B.M. stated he would not be satisfied until Doe was "flipping hamburgers and driving a Volkswagen." He wanted to harm Doe's personal and professional reputation. S.B.M. called Doe's mother and revealed intimate, graphic details about Doe's homosexual relationship with S.B.M.

On one occasion, while living in Greenville, Doe called the police and reported S.B.M.'s threatening conduct. After repeated threats and harassment by S.B.M., Doe moved to Charlotte, North Carolina. As a result, Doe lost his deposit on his apartment in Greenville. After Doe moved to Charlotte, S.B.M. continued to threaten and harass him. Doe called the Charlotte police twice and reported S.B.M.'s conduct. Once, Doe went to the Charlotte police station because S.B.M. was following him. S.B.M. broke into his apartment, physically threatened Doe, and damaged Doe's company vehicle by slashing the tires and scratching the paint with a key. He told Doe he tapped his phones. On the night of May 3, 1994, S.B.M. went to Doe's neighborhood, knocked on his neighbor's doors, and walked from door to door yelling Doe was a "queer," a "fag," and other crude names.

As a result of S.B.M.'s calls to Doe's employer, his threats to call Doe's customers, and his vandalism of Doe's car, Doe's employer asked him to resign from the insurance company. Doe was unemployed for two months.

After a hearing, the court granted a temporary restraining order until the case could be heard upon its merits. S.B.M., who was served on June 2, 1994, failed to answer, file a notice of appearance, or otherwise respond to the complaint. On September 2, 1994, the judge signed an order for entry of default, which was filed September 6, 1994. The order provid-

ed: "A hearing to ascertain damages shall be held on a date to be set by the Court...." By letter dated September 12, 1994, Doe's counsel mailed S.B.M. the order, along with interrogatories and a request for production of documents. In the letter, Doe's counsel explained "[a]lthough you are in default, the amount of damages has not yet been determined." He forwarded a notice of damages hearing scheduled for January 3, 1996, to S.B.M. on November 21, 1995.

At the damages hearing, S.B.M. appeared *pro se.* Without objection by S.B.M., Doe entered documentation of damages into evidence and testified extensively. At the end of the hearing, the trial judge orally issued an order without objection by S.B.M. Thereafter, the court issued a written order awarding Doe $9601.41 in special damages, $10,301.41 in compensatory damages, and $10,301.41 in punitive damages for a total award of $30,204.23.

After the issuance of the order awarding damages, S.B.M. filed a motion to be relieved of default. Additionally, he moved for a new trial and a new hearing on damages. The court denied the motions.

## ISSUES

I. Did the trial court err in awarding special damages when special damages were not pleaded?

II. Did the trial court err in awarding special damages relating to the vandalism of Doe's car?

III. Did the trial court err in calculating the compensatory damage award?

IV. Did S.B.M. fail to preserve the issues raised on appeal?

V. Did the trial court err in prohibiting S.B.M. from cross-examining Doe regarding the reason Doe lost his job?

## LAW/ANALYSIS

### Error Preservation

Of the issues S.B.M. raises on appeal, he preserved only one. Issues one through three are not preserved.

At the damages hearing, Doe testified. The court admitted four exhibits, consisting of (1) a collection of photographs of Doe's vandalized vehicle; (2) a letter from the assistant vice-president of Pennsylvania Lumbermens Mutual Insurance Company explaining the reason Doe was asked to resign; (3) an advertisement in regard to the job from which Doe was forced to resign; and (4) an outline of damages sustained by Doe. S.B.M. did not object to any of these exhibits or Doe's testimony.

Objections not raised in the trial court cannot be relied on in the appellate court. *Wilson v. Clary*, 212 S.C. 250, 47 S.E.2d 618 (1948). The duty is on the litigant to make a timely objection in order to preserve the right of review. *Parks v. Morris Homes Corp.*, 245 S.C. 461, 141 S.E.2d 129 (1965). A contemporaneous objection is required to properly preserve an error for appellate review. *State v. Hoffman*, 312 S.C. 386, 440 S.E.2d 869 (1994). The failure to make an objection at the time evidence is offered constitutes a waiver of the right to object. *Cogdill v. Watson*, 289 S.C. 531, 347 S.E.2d 126 (Ct.App.1986) (citing *McCreight v. MacDougall*, 248 S.C. 222, 149 S.E.2d 621 (1966)). *See also Washington v. Whitaker*, 317 S.C. 108, 451 S.E.2d 894 (1994) (by failing to raise contemporaneous objection to plaintiffs' request for punitive damages, city waived any objection to propriety of punitive damages against municipality); *Ball v. Canadian Am. Express Co.*, 314 S.C. 272, 442 S.E.2d 620 (Ct.App.1994) (failure to object at trial waives right to object on appeal).

As a general rule, an issue may not be raised for the first time on appeal, but must have been raised to the trial judge to be preserved for appellate review. Issues not raised in the trial court will not be considered on appeal. *State v. Hudgins*, 319 S.C. 233, 460 S.E.2d 388 (1995), *cert. denied*, 516 U.S. 1096, 116 S.Ct. 821, 133 L.Ed.2d 764 (1996). Matters not argued to or ruled on by the trial court are not preserved for review. *Food Mart v. South Carolina Dep't of Health and Envtl. Control*, 322 S.C. 232, 471 S.E.2d 688 (1996). *See also Hendrix v. Eastern Distribution, Inc.*, 320 S.C. 218, 464 S.E.2d 112 (1995) (issue not preserved for review should not have been addressed by Court of Appeals and opinion was vacated to extent it addressed issue that was not preserved); *State v. Sullivan*, 310 S.C. 311, 426 S.E.2d 766 (1993) (to

preserve an issue for appellate review, appellant must object at his first opportunity).

■ Our review of the trial record reveals S.B.M. did not object to any issue relating to damages except his request to cross-examine Doe regarding the loss of employment by Doe. S.B.M.'s failure to object at trial waives any right to raise issues one through three on appeal.

### Right of Cross–Examination on Reason
### Doe Lost His Employment

■ S.B.M. argues the trial court erred in prohibiting him from cross-examining Doe at the damages hearing regarding the reason Doe lost his job. He claims Doe's loss of employment is an element of damage, not a question of liability.

In *Howard v. Holiday Inns, Inc.*, 271 S.C. 238, 246 S.E.2d 880 (1978), our Supreme Court set out the procedure to be followed in a default damages hearing. In *Howard*, the Court explained:

The question of what right, if any, a defaulting defendant has to participate in the proceedings relative to the question of assessing damages has never been judicially resolved in this state.... There are three possible approaches. We could (1) allow damages to be determined in an *ex parte* proceeding, denying the defendant any right to participate; (2) allow damages to be ascertained after a full adversary contest, including the right of the defendant to produce evidence in rebuttal or in mitigation; or (3) allow damages to be ascertained with defense counsel's participation limited to cross-examination and objection to plaintiff's evidence. We hold that this third approach is the proper one and approve it for use in the courts of this state.

*Howard*, 271 S.C. at 241, 246 S.E.2d at 882.

In *Ammons v. Hood*, 288 S.C. 278, 341 S.E.2d 816 (Ct.App. 1986), this Court further explicated:

Finally, Hood alleges the trial court erred in restricting his cross-examination during the damages hearing to the issue of damages. In a default action, the default judgment settles the issue of liability. The hearing is held solely to determine what damages should be awarded. The trial

judge properly allowed Hood to cross-examine the witnesses regarding damages and Hood is entitled to no more.

*Ammons,* 288 S.C. at 282, 341 S.E.2d at 818.

The following colloquy involving the court, plaintiff's counsel, and S.B.M. occurred at the damages hearing:

Q: [Doe], were you issued a citation on October the 7th of '93 by Officer Bond of the Greenville City Sheriff's Department?

Mr. Churdar: Irrelevant, Your Honor.

The Court: What—

S.B.M.: It's very much relevant.

The Court: I'm glad that you think so, sir, but now why don't you tell me how it's relevant.

S.B.M.: Well, Your Honor, the reason [Doe] lost his job was this arrest. It is very, very much part of this case. He was confronted by his employer. He denied it, said it was a [Doe] from Charlotte, it was not him in particular.

The Court: Just a moment. All right, you're going back into something as to liability, and it has nothing to do with this case here.

S.B.M.: Your Honor, it's my understanding that there's a big part of this amount due on this is due to the fact that he lost his job.

The Court: Well, that's just it, that's already been established.

S.B.M.: Yes sir, he lost his job, but there was a reason he lost it not pertaining—

The Court: Unfortunately that should have been tried at another place. The liability has already been established. We're just trying to determine what the damages were by reason of that liability.

S.B.M.: I wasn't—I wasn't able to have a trial.

The Court: Oh, most certainly you were. You were at the time that you were served with these pleadings. That's when you were supposed to establish liability. Now we are trying to determine what the damages are by reason of liability.

Objection sustained.

. . . .

S.B.M.: So questions that I'm asked—that I'm able to ask—

The Court: As to the damages here.

S.B.M.: Okay.

The Court: Not as to the cause of the damages, but as to the amounts of the damages.

S.B.M.: Nothing pertaining to the case [sic] of the damages?

The Court: No, sir, that's liability, and that has been established by prior order of, I think it was Judge Floyd.

Mr. Churdar: Yes, Your Honor.

S.B.M.: So the only thing that I'm able to ask questions pertaining to would be the amount, the dollar amount?

The Court: Exactly. This is a damage hearing. This is no longer a liability—It doesn't have anything to do with any claims that might have been brought, or anything else. That's why we're just trying to keep this thing simple without complication. This is—

S.B.M.: I guess I'm just—

The Court: —a damage hearing. This is not liability. Liability has already been established.

We agree with the trial judge that the queries emanating from S.B.M. related to *liability* rather than *damages*. Consequently, the court properly prohibited S.B.M. from cross-examining Doe as to the reason he was asked to resign from his job.

### CONCLUSION

Accordingly, the trial court's order is

**AFFIRMED.**

HOWELL, C.J., and GOOLSBY, J., concur.