UNITED STATES of America,
Appellee,

v.

Joseph Carter BELLAMY, Walter Eddie Bellamy, and George David Bellamy, Appellants.

No. 8916.

United States Court of Appeals
Fourth Circuit.

Argued Sept. 27, 1963.

Decided Jan. 9, 1964.

B. D. Dusenbury, Florence, S. C. (Dusenbury, Dusenbury & McKenzie, Florence, S. C., on the brief), for appellants.

Terrell L. Glenn, U. S. Atty. (Wistar D. Stuckey, Asst. U. S. Atty., on the brief), for appellee.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and NORTHROP, District Judge.

SOBELOFF, Chief Judge:

The Brothers Bellamy—Joseph, George and Walter—appeal from their conviction by a jury on charges of breaking into a post office, 18 U.S.C.A. § 2115, stealing post office property, 18 U.S.C.A. § 1707, uttering forged money orders, 18 U.S.C.A. § 500, and conspiracy to commit these offenses, 18 U.S.C.A. § 371. Violations of constitutional rights are variously alleged, but essentially the defendants are aggrieved by the admission at their trial of a postal inspector's testimony concerning statements made to him by them.

The robbery of the post office at Longs, South Carolina, occurred on June 16, 1961. The loot included cash, postage stamps, blank money orders and other articles. Several days later the defendants were arrested and released on bond. The appellants remained free on bond from June, 1961, through their hearing before a United States Commissioner on August 12, 1961, where they were represented by counsel, until their trial in the District Court on December 6, 1962.

Two other persons were charged with complicity in the crime. One was Archidaldo Galindo, who was not apprehended. The other was William Bellamy, a fourth brother, who pleaded guilty when he was separately arraigned on September 21, 1961. Galindo and William Bellamy were escapees from a North Carolina prison. When William was arrested, he gave the inspector certain information about the crime. The same inspector, who later testified at the trial, also interviewed the three appellants on the date of their arrest, June 21, 1961, after advising them of their rights, and they freely made statements to him. The inspector had another discussion with the appellants, with the consent of their counsel, on August 12, 1961, the day of the preliminary hearing. But the statements elicited by the inspector on June 21 and August 12 are not the subject of the present controversy; the attack is on his testimony concerning admissions made to him when he interviewed them again on September 21, 1961, in an effort to corroborate certain details earlier that day furnished him by their brother William. The defendants' statements were incriminating, although enough independent testimony of eye witnesses was adduced at the trial to sustain a verdict against them. While their statements admitted their complicity, the defendants sought to mitigate the effect by claiming that William Bellamy and Galindo were the planners and leaders in the crime, and that they went along with William in the commission of crime only because they were threatened by him.

In the course of the inspector's testimony, the defendants' counsel (and the United States Attorney) learned for the first time of the interviews of September 21. Although counsel had assented to the inspector questioning his clients on August 12, the day of their arraignment, the September interrogation was undertaken without the lawyer's knowledge and despite the conceded fact that the inspector knew that the defendants had employed counsel. When the second interrogation came to light, defense counsel objected to this line of testimony by the inspector. The District Judge promptly ordered it stricken, declaring that the inspector, in questioning the defendants out of their lawyer's presence, violated their constitutional rights.

The attorney thereupon moved for a mistrial. This motion was denied, but the Judge stated that he would charge the jury not to consider the evidence. No objection was later made to the charge as given. Defense counsel also moved to quash the indictment on the ground that it was based, partly at least, on evidence obtained in violation of the defendants' rights, but this motion was denied on the ground that it came too late. The judge said that such a motion should have been made before trial, although he acknowledged that counsel did not learn of the grounds for the motion until the trial was in progress.

The defendants press their claim that the court erred in refusing to order a mistrial on the ground that the inspector's testimony was based on admissions elicited from them "in violation of their constitutional and civil rights" when they were interrogated while on bail out of the presence and without the consent of their lawyer. Counsel cites the Fifth and Sixth Amendments to the Constitution. The Government replies that the court struck out this line of testimony when the circumstances of the interrogation were learned, but that defense counsel himself pursued the matter beyond the point to which the government witness had carried it and brought out the damaging admissions. The Government adds that the substance of the challenged testimony was later repeated by the defendants themselves when they took the stand. The defendants' rejoinder is that, the subject having been opened before the jury, they had no choice but to combat the adverse testimony of the inspector, and it would be unfair to hold them to a waiver of their objection in such circumstances.

It is not necessary to grope through the obscurity raised by these

conflicting contentions, for we base our conclusion upon a more fundamental reason. In our view, not only was the motion for a mistrial properly denied, but there was no ground for the exclusion of the defendants' admissions of September 21. The Judge's action in striking the inspector's testimony was more favorable than the defendants were entitled to ask. The McNabb-Mallory doctrine which the defendants apparently would invoke is without application here. It has to do with the exclusion of incriminating statements obtained during a period of unlawful detention, when the danger of police imposition is enhanced by unnecessary delay in taking an arrested person before a committing magistrate. The purpose of Rule 5(a), Fed.R.Crim. P., is to avoid "the evil implications of secret interrogation." McNabb v. United States, 318 U.S. 332, 344, 63 S.Ct. 608, 614, 87 L.Ed. 819 (1943). In recognition of the known difficulty of fathoming the truth as to duress claimed to have been exerted by the police upon one in their power and without counsel or other means to protect himself, this rule was adopted to obviate the necessity for such inquiries, as well as to remove the incentive for illegal detentions. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100 (1948). We perceive no incompatability with either the letter or the spirit of the Fifth or Sixth Amendment or with Rule 5(a) if a defendant, duly cautioned by his attorney against speaking to investigating officers after he has been released from custody, disregards the attorney's admonitions and speaks willingly when he is free to remain silent. There is no suggestion here of coercion, deception or any kind of overreaching by the inspector. Circumstances could arise even when the interrogation of a defendant who is free on bail would violate his rights, but no such circumstances appear here. United States v. Smith, 283 F.2d 760, 764 (2d Cir. 1960); see also, United States v. Moore, 290 F.2d 436, 439 (2d Cir. 1961).

From this it follows that in our view the motion to quash the indictment was also properly refused. We need not accept the ground assigned—its untimeliness—for there was no opportunity earlier. However, the testimony of the inspector was competent for the grand jury as it was at the trial, and we need not consider the question as to whether an indictment may be challenged on the ground that it is based on incompetent evidence before the grand jury. See Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

Affirmed.