Edward WILLIAMS, Petitioner,

v.

STATE OF SOUTH CAROLINA and Ellis C. MacDougall, Director, South Carolina State Board of Corrections, Respondents.

John MORRIS, Petitioner,

v.

STATE OF SOUTH CAROLINA and Ellis C. MacDougall, Director, South Carolina State Board of Corrections, Respondents.

Civ. A. Nos. AC–1564, AC–1571.

United States District Court
E. D. South Carolina,
Columbia Division.

Jan. 7, 1965.

Matthew J. Perry, Columbia, S. C., for Edward Williams.

James A. Hutto, Jr., Columbia, S. C., for John Morris.

Daniel R. McLeod, Atty. Gen., for State of South Carolina, Columbia, S.

C., and Edward B. Latimer, Asst. Atty. Gen., Columbia, S. C., for respondents.

HEMPHILL, Chief Judge.

At the April 1962 term of General Sessions Court for Richland County, South Carolina, John Morris was convicted of murder, and Edward Williams of Accessory Before the Fact to Murder. The indictment[1] reads as follows:

"At a Court of General Sessions, begun and holden in and for the County of Richland, in the State of South Carolina, at Richland County Court House, in the County and State aforesaid, on the second Monday of April in the year of our Lord one thousand nine hundred and sixty-two.

"The Jurors of and for the County aforesaid, in the State aforesaid, upon their oath, Present:

"That John Morris and Edward Williams on the 3rd day of January in the year of our Lord one thousand nine hundred and sixty-two with force and arms, at Richland County Court House, in the County of Richland and State of South Carolina, in and upon one Martha Green Roof, feloniously, wilfully and of their malice aforethought, did make an assault, and that the said John Morris and Edward Williams her the said Martha Green Roof then and there feloniously, wilfully and of their malice aforethought with a loaded pistol did shoot, hit, strike and wound; giving to the said Martha Green Roof mortal wounds of which said mortal wounds the said Martha Green Roof did die in Richland County, South Carolina, on the 3rd day of January, 1962.

"And so the Jurors aforesaid, upon their oath aforesaid, do say that the said John Morris and Edward Williams, her the said Martha Green Roof then and there, in the manner and by the means aforesaid, feloniously, wilfully and of his malice aforethought, did kill and murder against the form of the Statute, in such case made and provided, and against the peace and dignity of the State.

"And the Jurors aforesaid, upon their oath aforesaid do further Present:

"That John Morris and Edward Williams late of the County and State aforesaid, on the 3rd day of January in the year of our Lord one thousand nine hundred and sixty-two with force and arms, at Richland County Court House in the County and State aforesaid, did wilfully and unlawfully carry a deadly weapon usually used for the infliction of personal injury, to wit: a pistol concealed about his person, he and the said John Morris and Edward Williams, then and there not being on their own premises, and not being a peace officer in the actual discharge of their duty as such, against the form of the Statute in such case made and provided, against the peace and dignity of the State.

"And the Jurors of and for the County aforesaid, in the State aforesaid, upon their oath; Present:

"That John Morris late of the County and State aforesaid on the 3rd Day of January in the year of our Lord one thousand nine hundred and sixty-two with force and arms, at Richland County Court House, in the County and State aforesaid, in and upon one Martha Green Roof feloniously, wilfully and of his malice aforethought, did make an assault, and that the said John Morris her the said Martha Green Roof then and there feloniously, wilfully and of his malice aforethought, did with a loaded pistol shoot, hit, strike and wound; giving to the said Martha Green Roof thereby and upon the body of her the said Martha Green Roof mortal wounds of which said mortal wounds the said Martha

---

1. Returned by the Grand Jury as a "true bill" the second Monday of April, 1962.

Green Roof did die in Richland County, South Carolina, on the 3rd day of January, 1962.

"And the Jurors aforesaid, upon their oath aforesaid, do further present that Edward Williams on the 3rd day of January, in the year of our Lord one thousand nine hundred and sixty-two, and at divers other times prior thereto, the exact times being unknown to the jurors aforesaid, before said murder was committed, with force and arms, at Richland County Court House, in the County of Richland and State of South Carolina, unlawfully, feloniously, and of his malice aforethought, did then and there counsel, hire, advise, assist and procure the said John Morris to commit the said felony and murder upon the said Martha Green Roof in the manner and form aforesaid, against the form of the Statute in such case made and provided and against the peace and dignity of the State.

"And the Jurors of and for the County aforesaid, in the State aforesaid, upon their oath, do further Present:

"That John Morris late of the County and State aforesaid, on the 3rd Day of January in the year of our Lord one thousand nine hundred and sixty-two with force and arms, at Richland County Court House in the County and State aforesaid, in and upon one Martha Green Roof feloniously, wilfully and of his malice aforethought, did make an assault, and that the said John Morris her the said Martha Green Roof then and there feloniously, wilfully and of his malice aforethought with a loaded pistol did shoot, hit, strike and wound; giving to the said Martha Green Roof thereby and upon the body of her the said Martha Green Roof mortal wounds of which said mortal wounds the said Martha Green Roof did die in Richland County, South Carolina, on the 3rd day of January, 1962.

"And so the Jurors aforesaid, upon their oath aforesaid, do say that the said John Morris her the said Martha Green Roof then and there in the manner and by the means aforesaid, feloniously, wilfully and of his malice aforethought, did kill and murder against the form of the Statute in such case made and provided, and against the peace and dignity of the State.

"And the Jurors aforesaid, upon their oath aforesaid, did further present, that Edward Williams, late of the County and State aforesaid, on the 3rd day of January, in the year of our Lord one thousand nine hundred and sixty-two, and divers times thereafter, the exact times being unknown to the jurors aforesaid, with force and arms, at Richland County Court House, in the County of Richland and State of South Carolina, wilfully, feloniously and of his malice aforethought did assist, aid, and abet one John Morris, (who as the said Edward Williams at said time well knew feloniously, wilfully and of his malice aforethought in and upon one Martha Green Roof had made an assault in the County of Richland, State of South Carolina, on the 3rd day of January, in the year of our Lord one thousand nine hundred and sixty-two, and who then and there feloniously, wilfully and of his malice aforethought, with a loaded pistol had shot, hit, struck, and wounded the said Martha Green Roof, giving to the said Martha Green Roof, upon her body mortal wounds of which mortal wounds, she did then and there die in Richland County, South Carolina) to escape and avoid being apprehended and punished for committing said murder by aiding and assisting the said John Morris to conceal the commission of said crime and did then and there feloniously, wilfully and of his malice aforethought, harbor, maintain, and aid to escape detection for the commis-

sion of said crime, against the form of the Statute in such cases made and provided and against the peace and dignity of the State.

"(Signed) T. P. Taylor Solicitor."

At the trial defendants were represented by counsel of record here. A motion was made as follows:

"MR. PERRY: Your Honor, we have a motion before the jury returns.

"THE COURT: All right.

"MR. PERRY: May it please the Court the indictment in this case against John Morris and Edward Williams charges in three separate counts, first, the offense of murder as to both men as principals; second, the offense of murder as to John Morris, and accessory before the fact of murder as to the defendant, Williams; and third, murder as to the defendant, John Morris, and accessory after the fact of murder as to the defendant, Williams. We move at this time, especially with reference to the defendant, Williams, that the State be required to elect as to which count they will proceed on, that is to say, murder, or accessory before the fact, or accessory after the fact of murder. Obviously the defendant, Williams, would have to be guilty of one or the other. He couldn't be guilty of

both murder and accessory before or after the fact, and we feel that he is entitled to be informed of the offense on which he is to be tried.

"THE COURT: Why didn't you make your motion before the jury was drawn.

"MR. PERRY: Actually, Sir, I was waiting for the defendant to be called on to plead. I realize that he was arraigned, but it has been my understanding that the defendant is called upon to plead at the time of the commencement of the trial.

"THE COURT: No. My ruling is that the State is not required to elect."

This was the only motion made prior to taking of testimony.

After conviction appeal was duly had to the Supreme Court of South Carolina, which, on November 18, 1963 [2] affirmed, in the conviction which carried the death sentence.[3]

Subsequently each accused, filed a petition in the Supreme Court of the United States asking for a Writ of Certiorari; this was denied June 22, 1964. 377 U.S. 1001, 84 S.Ct. 1935, 12 L.Ed. 2d 1050. Rehearing was denied October 12, 1964, 85 S.Ct. 24. Execution of each and both were thereafter scheduled for November 13, 1964. This effectuated a

2. State v. Morris & Williams, 243 S.C. 225, 133 S.E.2d 744.

3. Section 16–1 of the South Carolina Code of Laws for 1962 provides: "Accessories before fact punished as principals.—Whoever aids in the commission of a felony or is accessory thereto before the fact by counseling, hiring or otherwise procuring such felony to be committed shall be punished in the manner prescribed for the punishment of the principal felon."

Section 16–2 of the South Carolina Code of Laws for 1962 provides: "When and how tried.—Whoever counsels, hires or otherwise procures a felony to be committed may be indicted and convicted as an accessory before the fact either with the principal felon or after his conviction or may be indicted and con-

victed of a substantive felony, whether the principal felon has or has not been convicted or is or is not amenable to justice, and, in the last-mentioned case, may be punished in the same manner as if convicted of being an accessory before the fact."

Section 16–52 of the South Carolina Code of Laws for 1962 provides: "Punishment for murder.—Whoever is guilty of murder shall suffer the punishment of death; *provided, however,* that in any case in which the prisoner is found guilty of murder the jury may find a special verdict recommending him to the mercy of the court, whereupon the punishment shall be reduced to imprisonment in the Penitentiary with hard labor during the whole lifetime of the prisoner."

removal of the stay [4] of execution issued by the Chief Justice of the Supreme Court of South Carolina December 13, 1963.[5]

On November 9, 1964 each petitioner argued before the Supreme Court of South Carolina for a further stay of execution, for a Writ of Habeas Corpus and a hearing on certain alleged constitutional questions, the Supreme Court of South Carolina, in a unanimous opinion ruled: "After review of the record in the above case the Motion for Stay of Execution is hereby refused."

Petitioner Williams, proceeding in forma pauperis, filed a petition for a Stay of Execution, which was granted, so that his application for a Writ of Habeas Corpus would be considered. The petition for the Great Writ was filed October 29, 1964, and in relevant part alleged:

"Petitioner complained and complains that he was not accorded a fair trial and begs leave to submit upon the hearing herein the records in the course of the proceedings heretofore had in connection with the indictment and conviction and the appeal thereupon, wherein and wherefrom this Court may be apprised of the contentions of petitioner without setting forth the same at length herein and petitioner prays that such records be deemed to have been made a part of this petition by reference. Petitioner further desires to present additional evidence in support of his contention that his conviction in the State Court violated the Constitution of the United States.

"At his trial in said Court of General Sessions for Richland County, the State introduced against petitioner a confession and other inculpatory statements allegedly made by petitioner while in the custody of the police. Petitioner alleges that he was questioned by the police intermittently over a period of three days without the benefit of counsel by police officers who knew or should have known that, prior to his arrest, and prior to the interrogations which lead to the making of the alleged confessions, petitioner had retained the service of a lawyer. Notwithstanding the fact that the police knew or should have known that petitioner had engaged said lawyer, they failed and refused to advise petitioner of the right to have his lawyer present; they failed and refused to call the lawyer; and further, they failed and refused to advise petitioner of his right to remain silent and to not make any statement at all.

"At the said trial in the Court of General Sessions for Richland County, the State introduced as evidence against petitioner a pistol which the State alleged to have been used in the commission of the crime of murder. Petitioner alleges that the pistol was unlawfully seized from the possession of petitioner by police who did not have in their possession a valid search warrant and use of the pistol as evidence against petitioner was in violation of the Four-

4. See Wilson v. Clary, 212 S.C. 250, 47 S.E.2d 618.

5. Section 17-578, South Carolina Code of Laws for 1962 provides:
"Execution of death sentence upon dismissal of appeal.—In all criminal cases in which the sentence of death is imposed and which are appealed to the Supreme Court or in which notice of intention to appeal is given, when the judgment below has been affirmed or the appeal dismissed, or abandoned, the clerk of the Supreme Court, when the remittitur is sent down or the appeal is dismissed or abandoned, shall notify the Director of the prison system or his duly appointed officer in charge of the State Penitentiary of the final disposition of such appeal and, on the fourth Friday after the receipt of such notice the sentence appealed from shall be duly carried out as provided by law in such cases, unless stayed by order of the Supreme Court or respite or commutation of the Governor."

teenth Amendment to the United States Constitution.

"At the trial of petitioner in the Court of General Sessions for Richland County, the State introduced as evidence against petitioner an insurance policy. Petitioner alleges now and has previously alleged that the police obtained possession of this insurance policy from petitioner's residence without his consent or permission and without the police having in their possession a valid search warrant and that its use as evidence against petitioner was in violation of the Fourteenth Amendment to the United States Constitution. Petitioner alleges that an additional reason exists concerning why the insurance policy should have been excluded, to wit: That the evidence adduced at petitioner's trial is to the effect that the insurance policy was given the police by petitioner's wife and this amounted to the giving of evidence in a criminal proceeding against petitioner by his wife in violation of Section 26–403, Code of Laws of South Carolina for 1962.

"Petitioner, through counsel, has now exhausted all remedies by appeal before the Courts of the State of South Carolina."

Morris' petition for the Great Writ alleged:

"Petitioner desires to present additional evidence in support of his contention that his conviction in the State Court violated * * * (the) Constitution of the United States.

"Plaintiff's rights were violated under the Sixth and Fourteenth Amendment to the United States Constitution in that he was indigent and was not appointed counsel in time to protect his rights; in that said counsel had no opportunity to demand a preliminary hearing as provided in the Code of Laws of South Carolina Section 43–231 and 232 and that the said Fifth Circuit

Court of General Sessions for the State of South Carolina had no jurisdiction of the Petitioner herein as provided in the Code Section set out above.

"That the jury venire of the Court of General Sessions of Richland County, before whom this Defendant was tried was improper and did constitute a proper jury in that women had been and were systematically excluded from said jury panel and which was in violation of the Constitution of the United States.

"Petitioner, through counsel, has now exhausted all remedies by appeal before the Courts of the State of South Carolina.

"No previous application for the relief sought herein has been made to this Court or any judge thereof."

This Court then provided, by its order of November 19, 1964, as follows:

"Before the Court are petitions for writs of habeas corpus filed against the State of South Carolina and the Director of the South Carolina State Board of Corrections who presently have custody of petitioners at the South Carolina State Penitentiary where they are incarcerated pursuant to a judgment of the Court of General Sessions of Richland County, South Carolina, upon convictions of murder and accessory before the fact of murder. Petitioners who are awaiting the sentence of death by electrocution, allege exhaustion of all remedies by appeal before the Courts of the State of South Carolina, seek to invoke the Great Writ on the basis that his conviction violated the Constitution of the United States.

"The facts upon which the convictions are based are fully reported in State v. John Morris and Edward Williams, 243 S.C. 225, 133 S.E.2d 744, cert. den. [377 U.S. 1001, 84 S.Ct. 1935, 12 L.Ed.2d 1050], pet rehear, of order denying

cert. den. 377 U.S. 1001 [85 S.Ct. 24, 13 L.Ed.2d 81]. In substance, petitioner Williams was alleged to have approached petitioner Morris and induced the latter to murder Martha Green Roof for the purpose of collecting insurance. Williams allegedly furnished the pistol and did other preliminary acts to help effectuate the murder. Trial was had, Morris convicted of murder and Williams of being an accessory before the fact of murder.

"Each petitioner alleges that his rights under the Fourteenth Amendment to the Constitution were violated in several particulars.

"Petitioner Morris alleges that his constitutional rights under the Fourteenth Amendment were violated in that he was indigent and was not appointed counsel in time to protect his rights in that said counsel had no opportunity to demand a preliminary hearing as provided for by §§ 43–231 and 43–232 of the S.C. Code, 1962.

"Petitioner Morris also alleges that the jury venire of the Court of General Sessions of Richland County, South Carolina, before whom he was tried, was improper and did not constitute a proper jury in that women had been and were systematically excluded therefrom in violation of the Constitution of the United States. He also alleges exhaustion of all remedies by appeal before the Courts of the State of South Carolina.

"Petitioner Williams alleges that a confession and other inculpatory statements he made while in the custody of the police violated his constitutional rights in that interrogation and restraint was visited upon him after he had retained counsel, about whom the police knew, and that the police knowing this, refused to advise him of his right to have counsel present, refused to advise him of his right to remain silent, and refused to call the known lawyer until after an incriminating statement was made.

"Williams also alleges that a pistol introduced as evidence against him was unlawfully seized from his possession by police who did not have a valid search warrant.

"Thirdly, he alleges that an insurance policy introduced as evidence against him was seized unlawfully from his residence, without his consent or permission, and without the police having in their possession a valid search warrant.

"Finally, petitioner Williams alleges (for the first time) that the evidence at the trial is to the effect that the insurance policy was given to the police by petitioner's wife and that this amounts to the giving of evidence by said wife against him in a criminal proceeding in violation of § 26–403, S. C. Code, 1962. "The real issue here is whether or not petitioners received a fair trial in accordance with the due process clause of the Fourteenth Amendment, which in part provides: ' * * nor shall any State deprive any person of life, liberty, or property, without due process of law.' Petitioners' guilt or innocence is immaterial to this Court's inquiry. See Sheppard v. Maxwell, 231 F.Supp. 37, 43 (S.D. Ohio 1964).

"This Court has the power to consider every constitutional claim presented by petitioners even if these claims were passed upon in the State proceedings. Fay v. Noia, 372 U. S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837]. "The main thrust of petitioners' constitutional claim is that they were effectively denied the right to counsel when such denial substantially prejudiced their constitutional rights. As the Supreme Court noted last term in Escobedo v. Illinois, 378 U. S. [478] 487, 490, 491 [84 S.Ct. 1758, 12 L.Ed.2d 977]:

" 'No system worth preserving should have to *fear* that if an accused is permitted to consult with

a lawyer, he will become aware of, and exercise, * * * (his) rights. If the exercise of constitutional rights will thwart the effectiveness of a system of law enforcement, then there is something very wrong with that system.

" 'We hold, therefore, that where * * * the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied "the Assistance of Counsel" in violation of the Sixth Amendment to the constitution as "made obligatory upon the States by the Fourteenth Amendment," Gideon v. Wainwright, 372 U.S. [335], at 342 [83 S.Ct. 792, 9 L.Ed.2d 799], and that no statement elicited by the police during the interrogation may be used against him at a criminal trial.'

"See also Massiah v. United States, 377 U.S. 201 [84 S.Ct. 1199, 12 L. Ed.2d 246].

"The Court is mindful of the holding in United States v. Bellamy, 326 F.2d 389, 391 (4th Cir. 1964), but feels it is necessary to hold a hearing to ascertain if a similar state of facts exists.

"Each petitioner is in the South Carolina State Penitentiary, awaiting the infliction of the death sentence by electrocution. [In accordance with § 55–373, S. C. Code, 1962.] At this time this Court cannot pass on the merits of the petitions for relief; suffice it to say that the allegations in the petition do not appear to be frivolous, and, if there be merit, deserve judicial determination.

"This Court feels it appropriate to exercise its discretion, in the interest of orderly State-Federal relations, and to defer a decision on the merits of the Petitions for Writ of Habeas Corpus, and/or hearing thereon until such time as the Courts of South Carolina have reviewed these cases, the issues raised, in the light of Escobedo, supra, if further hearing is granted before such Courts. If it be determined by such Courts that all state remedies have been exhausted, and right to state determination has expired, then this Court will grant a hearing: Petitioners are entitled to their 'day in Court' in this forum if for no other reason than to have this Court pass on the constitutional issues, and their respective merit.

"Subsequent to the petitions for habeas corpus, Petitions for Stay of Execution were also filed with this Court.

"It appears that execution of the sentence of death should be stayed pending determination by this Court concerning the merits of the Petition for Writ of Habeas Corpus. Now therefore,

"IT IS ORDERED that Respondents, their agents, servants, employees and all persons acting in concert with them be and they are hereby restrained from executing either petitioner's sentence of death herein pending the entry of a further Order herein.

"IT IS FURTHER ORDERED that the said Respondents show cause before me on the 20th day of November, 1964, at 10:30 o'clock A. M., in the Court Room of the United States District Court in Columbia, South Carolina, why the above Order should not continue in effect pending exhaustion by the petitioners of the remedy afforded them by

the filing of the Petitions for Writ of Habeas Corpus.

"Let a copy of this Order, together with the Petition for Stay of Execution be forthwith served upon Ellis C. MacDougall, Director, South Carolina State Board of Corrections, and the Attorney General of South Carolina by the United States Marshal.

"IT IS FURTHER ORDERED that leave to file the petitions without the prepayment of costs or fees or the giving of security therefor is granted.

"AND IT IS SO ORDERED."

■ At a hearing held in Columbia, S. C., on November 20, 1964 inquiry was had to determine whether Williams had had full adjudication of his rights. At all levels of the State Courts the same questions were presented as are set up in his petition to this Court. Of course the denial of certiorari by the Supreme Court of the United States is not an adjudication, as such,[6] but refusal of a rehearing, in addition, seems clear indication that the issues were *twice* considered.

In Harris v. South Carolina, 338 U. S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815, the defendant was subjected to questioning from Sunday to Wednesday while in jail, and was not permitted access to family or friends during the entire period. In Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037, the defendant was held in jail for more than four days before he confessed, and his wife and daughter were persuaded by police to assist in "breaking" him. And in Watts v. Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801, the defendant was questioned relentlessly for five days and nights while being denied access to friends or professional advice. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, does not aid petitioners. The factual situation is so totally different that only the most broadly stated precepts set forth in Powell can be made applicable here. In Powell, the defendants were furnished counsel, charged with any degree of responsibility, for the first time a few minutes before going to trial. Here, the petitioner has counsel of his own choosing almost from the time of his first arrest, and every opportunity was afforded him to confer with his counsel except during the two short periods of actual questioning.

The Court said in Culombe v. Connecticut, 367 U.S. 568, 579, 580, 81 S. Ct. 1860, 1866:

"But if it is once admitted that questioning of suspects is permissible, whatever reasonable means are needed to make the questioning effective must also be conceded to the police. * * * Indeed, even to inform the suspect of his legal right to keep silent will prove an obstruction. Whatever fortifies the suspect or seconds him in his capacity to keep his mouth closed is a potential obstacle to the solution of crime."

Ordinarily, the question whether a defendant's confession was. obtained by coercion is one that can only be answered by reviewing all the circumstances surrounding the confession. Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975. See also Davis v. North Carolina, 339 F.2d 770 (4th Cir. 1964) (Decided December 8, 1964).

■ Williams was an alleged illiterate but a person of average intelligence who has successfully managed his own business for over twenty years. There is

---

6. Federal Supreme Court's denial of cert. is not an adjudication of anything. Texas Const. Co. v. United States for use of Caldwell Foundry & Mach. Co., 236 F.2d 138 (5th Cir. 1956). Denial of a Petition for writ of cert. to review decision of Court of Appeals of Maryland reversing conviction of radio stations for contempt meant only that fewer than four members of Supreme Court thought that certiorari should be granted, and such denial carried with it no implication whatever regarding views of Supreme Court on merits of the case. State of Md. v. Baltimore Radio Show, 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562.

a total absence of any evidence which would suggest that petitioner's confession was coerced. No one threatened him, and he was not promised a reward of any nature. The confession was not obtained either by subterfuge, relentless interrogation or prolonged incarceration. While the testimony is conflicting as to whether Williams was told that he had a right to call his attorney, the record does reveal that he was advised that he had a right to remain silent and make no statement at all. Although petitioner's counsel was not present at these interrogations, Williams had ample opportunity to confer with his attorney during the times that he was in the latter's custody. As petitioner never requested that his attorney be present during the interrogations, Cf. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, there is not the slightest basis for holding that his confession was rendered involuntary simply because his attorney was not there to advise him.

Petitioners claim constitutional prejudice from the admission of certain items in evidence.

 Evidence that is obtained as the result of an unlawful search and seizure is inadmissible in a state criminal prosecution. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. Here, however, the testimony discloses that the pistol was voluntarily given to the police officers by Williams, and that the insurance policy was freely delivered to the officers by Williams' wife. In neither case, was there a search; and in both instances, the officers simpy requested the particular items. The mere fact that the persons who asked for the pistol and insurance policy were police officers has never been held to constitute coercion.

The pistol and the insurance policy used in evidence against the petitioners were obtained without search warrants. The Petitioner, Williams, who owned and operated a cafe, was known by police to have been in the habit of keeping a pistol in open view beside his cash register. A police officer investigating the murder went into the cafe to look for that pistol. He did not see it in its usual place. This officer, whose regular assignment was to "walk the beat" in the vicinity of the cafe, left the cafe and returned a few minutes later accompanied by two detectives who had been assigned to the murder case. One of the officers then talked to Williams, "asking about" the pistol. Petitioner unlocked the drawer and the officers took the pistol out. Evidence showed this pistol to have been the murder weapon.

Information relating to the policy of life insurance on the deceased, in which Williams was named beneficiary, was obtained from Williams at the time he confessed. Police officers then went to petitioner's home and asked petitioner's wife for the policy. She gave it to them.

The Supreme Court of South Carolina considered fully the argument advanced by petitioners that the pistol and insurance policy were seized illegally, and held that there was not a search in either case. This Court agrees.

Is there a denial of due process for the State to fail to provide an indigent, illiterate defendant an attorney far enough in advance of trial to enable him to demand a preliminary hearing?

Although this ground was not asserted or argued before the South Carolina Supreme Court, respondent made no objection to the issue being presented before the United States Supreme Court for the first time, since it appeared that the State Court had ruled in State v. White, 243 S.C. 238, 133 S.E.2d 320, 321, on the question as presented. The allegation was denied when the South Carolina Supreme Court refused to stay the execution of the sentence on November 9, 1964.

The South Carolina Supreme Court recently considered the question of whether or not a preliminary hearing was such critical stage of proceedings that it was denial of due process for an indigent defendant charged with a capital offense not to be represented by an attorney, and held in White that the sole purpose of preliminary hearing in

South Carolina is to determine if the State can show probable cause. The defendant is not permitted to enter a plea, and he may not make a sworn statement.

■■ White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, does not control here because of the differences in the laws of the two States. Under Maryland law the defendant may enter a plea at a preliminary hearing, and, in White v. Maryland, did enter a plea of guilty which was admitted in evidence against him at his trial. In Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, the defendant, without counsel, appeared for arraignment and entered a plea to the charge. The Court said in Hamilton, 368 U.S. at 55, 82 S.Ct. at 159:

> "Only the presence of counsel could have enabled this accused to know all the defenses available to him and to plead intelligently."

Ignorance of defenses available to him cannot prejudice a defendant in a preliminary hearing in South Carolina. He is prohibited from entering a plea or from making any statement which may be used against him. He may not introduce any evidence. Under South Carolina law, Section 43–231, 1962 Code, a magistrate may discharge a defendant. This obviously means discharge from custody, since a magistrate does not have jurisdiction to acquit a defendant charged with murder. The defendant may be indicted and tried without regard to the finding of the hearing magistrate at a preliminary hearing. Indeed, a crime may be charged initially by indictment, in which case there is no right to a preliminary hearing at all. State v. Nesmith, 213 S.C. 60, 66, 48 S.E.2d 595. The only thing to be gained by a defendant in a preliminary hearing in South Carolina is release from custody until he is indicted.

■■ Petitioner could not have made any plea or asserted any defense at a preliminary hearing. He could have made no statement that could have been used for him or against him. There is no way in which petitioner could have been prejudiced in the conduct of his defense by failure to demand such hearing. In fact, preliminary hearings in South Carolina are for the benefit of the accused only, and is not part of any proceeding against him; and the only benefit to be derived therefrom is the release of the defendant from custody if the State fails to show probable cause. Discharge at preliminary hearing in no wise affects subsequent prosecution by the State. State v. Flintroy, 178 S.C. 89, 93, 182 S.E. 311. Although there is a statement in Flintroy (178 S.C. at 93, 94, 182 S.E. 311) that a defendant is often denied opportunity to know the exact nature of the charge against him by denial of preliminary hearing, such cannot be the case here. Petitioner was represented by counsel, the indictment was read to him at arraignment with counsel present, and there was no claim before the State Court, nor is there claim here, that petitioner did not know the exact nature of the charge against him or that he did not have full opportunity to prepare his defense.

Qualified male electors constitute the juries of South Carolina. 1962 South Carolina Code, Section 38–52. Women are not allowed to serve as jurors. State v. Middleton, 207 S.C. 478, 36 S.E.2d 742; State v. Mittle, 120 S.C. 526, 113 S.E. 335, Cert. den. 260 U.S. 705, 43 S.Ct. 164, 67 L.Ed 473. See generally, South Carolina Digest, Jury, ☞33, 38 and 39.

■■ A state may confine the selection of jurors to males, to freeholders, to citizens, to persons within certain ages, or to persons having certain educational qualifications, but no race may be proscribed as incompetent for jury service. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469. See generally, 33 Modern Federal Practice Digest, Jury, ☞33(1) and 39.

The United States Supreme Court has held that a Florida jury statute according women an absolute exemption from jury service unless they expressly waive

the privilege by indicating a desire to be placed on the jury list is not unconstitutional as an arbitrary class exclusion. Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118.

It is therefore ordered:

That the Order for Stay of Execution, heretofore issued by this Court, be set aside;

That Respondents be no longer under restraint of this Court;

That the Clerk of Court for the United States District Courts for the Eastern District of South Carolina forward a copy of this Order to all concerned.

And it is so ordered.